Marshall C. SASSER, Petitioner,

v.

The ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 91–2750.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1992.

Decided March 24, 1993.

Dove Walter Green, Jr., Conway, SC, argued (Phillip D. Sasser, on the brief), for petitioner.

Jon Michael Lipshultz, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, argued (Barry M. Hartman, Acting Asst. Atty. Gen., Environment and Natural Resources Div., U.S. Dept. of Justice, Steven Neugeboren, Office of General Counsel, Craig Higgason, Office of Regional Counsel, U.S. E.P.A., Atlanta, GA, on the brief), for respondent.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

OPINION

BUTZNER, Senior Circuit Judge:

The primary issue in this petition for review is whether a person who is charged in an administrative complaint with discharging pollutants into the waters of the United States is entitled to be tried by a jury. Dr. Marshall C. Sasser seeks to set aside a final order of the Administrator of the Environmental Protection Agency assessing Class II penalties for reimpounding freshwater tidal wetlands without a permit. 33 U.S.C. § 1311(a). Dr. Sasser complains that the Administrator lacked subject matter jurisdiction over his case, that the administrative proceedings violated his Seventh Amendment right to a jury trial, and that the Administrator failed to consider his good faith. We deny the petition for review.

I

Located on Dr. Sasser's plantation adjacent to the Pee Dee River in South Carolina are long-abandoned rice fields whose dikes have been breached creating tidal freshwater wetlands. In 1981, Dr. Sasser applied to the Corps of Engineers for a permit to restore the dikes around a 76–acre field in order to impound water for duck hunting. He sought to reconstruct approximately 4,800 linear feet of an existing embankment, repair six breaks, and install a water gate. Various state and federal agencies objected to the project, and the Corps denied the permit.

Several years later, acting on the assumption that a nationwide permit authorized the work, Dr. Sasser constructed a new embankment inside of an old, deteriorated embankment. The work involved filling the breaks in the old embankment, installing a water gate, and discharging dredged or fill material into the wetlands. After the Corps discovered the project in 1987, Dr. Sasser declined to restore the property to its previous condition as wetlands. The Corps then referred the matter to the Environmental Protection Agency (EPA).

The EPA issued an administrative order requiring Dr. Sasser to cease and desist his activities and to submit a restoration plan. Upon Dr. Sasser's failure to comply, the EPA again requested the plan. In June 1988, the EPA issued an administrative consent order containing a restoration plan. Dr. Sasser's refusal to comply with these orders led to the issuance of a complaint charging violation of 33 U.S.C. § 1311 by discharging a pollutant from a point source into a tributary of the navigable Pee Dee River, which is a water of the United States. *See United States v. Sasser*, 967

F.2d 993, 995–96 (4th Cir.1992) (holding that waterway in question is navigable), *petition for cert. filed,* (Oct. 29, 1992).

An administrative law judge found facts sufficient to sustain the allegations of the complaint, imposed a $125,000 fine, and directed Dr. Sasser to submit and implement a restoration plan. On appeal, the agency's chief judicial officer reimposed the fine and affirmed. This decision became the Administrator's final order which is the subject of this petition.

## II

■ Dr. Sasser protests the Administrator's order on the ground that the Administrator lacked subject matter jurisdiction to determine liability and assess a civil penalty. An action in the district court, he asserts, was the only means of imposing a civil penalty for discharging pollutants into wetlands without a permit. Dr. Sasser first raised this issue in his reply brief on appeal.

A motion to dismiss for lack of subject matter jurisdiction may be raised at any time. Fed.R.Civ.P. 12(h). Accordingly, Dr. Sasser's claim is timely, and the issue is properly before this court. The parties have thoroughly briefed and argued the question. Material facts are not in dispute, and the agency is precluded from deciding the constitutional issue. *See Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

The administrative complaint charges that in December 1986 Dr. Sasser discharged pollutants into the wetlands without a permit. At that time, EPA's sole means of recovering a civil penalty was through proceedings in the district court. 33 U.S.C. § 1319(b). If matters had remained in this posture, Dr. Sasser's jurisdictional challenge would have merit, but two additional circumstances must be taken into account.

■ By an amendment to the Act in February 1987, Congress authorized the Administrator to assess civil penalties. Assessment of a Class II penalty requires the Administrator to conduct proceedings in accordance with the Administrative Procedure Act, 5 U.S.C. § 554. An aggrieved person is entitled to judicial review. *See* 33 U.S.C. § 1319(g)(1), (2)(B), and (8). The Administrator acted pursuant to the amendment. Dr. Sasser contends that administrative assessment of the penalty constitutes an unlawful retroactive application of the amendment.

If the only violation of the Act had occurred in December 1986, Dr. Sasser would have at least a colorable argument against retroaction, but it is an argument which we need not address. Dr. Sasser's violation of the Act is a continuing one. Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation. *See United States v. Ciampitti,* 669 F.Supp. 684, 700 (D.N.J.1987); *United States v. Cumberland Farms,* 647 F.Supp. 1166, 1183–84 (D.Mass.1986), *aff'd* 826 F.2d 1151 (1st Cir.1987). The administrative complaint appropriately charged a continuing violation. The Act, both before and after the 1987 amendment, authorized the imposition of a civil penalty not to exceed $10,000 for each day of the continuing violation, subject in the case of an administrative assessment to a maximum penalty of $125,000. *See* 33 U.S.C. § 1319(d) and (g)(2)(B).

Since Dr. Sasser's violations continued long after the enactment of the 1987 amendment, the Administrator acted within the jurisdiction that Congress conferred on him in 33 U.S.C. § 1319(g), and this court has jurisdiction to review the Administrator's assessment. *See* § 1319(g)(8)(B).

## III

■ Closely related to Dr. Sasser's contention about lack of jurisdiction is his claim that the Seventh Amendment entitles him to a jury trial. He relies primarily on *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

The Seventh Amendment preserves the right to a jury in "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. Amend. VII. *Tull* dealt with a civil action brought by the United States against a person who dumped fill in wetlands without a permit. The government commenced the action before enactment of the 1987 amendment. The Court held that the Seventh Amend-

ment afforded the defendant a jury on the issue of liability. 481 U.S. at 417–25, 107 S.Ct. at 1835–39. The Court also held that the defendant did not have a Seventh Amendment right to have the jury assess the civil penalty and that Congress intended trial judges to determine the amount of the penalty. 481 U.S. at 425–27, 107 S.Ct. at 1839–40.

The Court had no occasion to decide in *Tull* the issue of Congress's authority to assign enforcement of the Act to an administrative agency without the intervention of a jury. But it noted precedent "holding that the Seventh Amendment is not applicable to administrative proceedings." 481 U.S. at 418 n. 4, 107 S.Ct. at 1835 n. 4.

Generally speaking, the Seventh Amendment does not apply to disputes over statutory public rights, "those which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Crowell v. Benson*, 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932); *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51–55, 109 S.Ct. 2782, 2795–97, 106 L.Ed.2d 26 (1989); *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 449–61, 97 S.Ct. 1261, 1266–72, 51 L.Ed.2d 464 (1977). The dispute between Dr. Sasser and the Administrator clearly involves statutory public rights. Authority for this proposition is found in the congressional declaration that the goals of the Act are the restoration and maintenance of the integrity of the nation's waters. 33 U.S.C. § 1251 (Supp.1992). Consequently, we conclude that the Seventh Amendment did not prohibit the assessment of a civil penalty against Dr. Sasser without the intervention of a jury.

## IV

Contending that his good faith reliance on the advice of counsel obviates a finding of willfulness, Dr. Sasser protests that the administrative judge erred in imposing the maximum penalty allowed by the Act. We review the penalty under the abuse of discretion standard. 33 U.S.C. § 1319(g)(8).

At the time pertinent to this case, the Corps of Engineers was authorized to issue two types of permits for the discharge of dredged or fill materials. The first type was an individual permit which was issued on a case-by-case basis after public comment about the project. *See* 33 CFR Part 325 (1986). Dr. Sasser applied for an individual permit, but the Corps denied it after state and federal agencies opposed it.

The Corps also issued nationwide permits, which allowed work to be undertaken without an individual permit. *See* 33 CFR § 330.5. A neighbor of Dr. Sasser asked the Corps about rehabilitating an existing embankment. After an aerial inspection, the Corps responded by stating in a letter that topping existing embankments was permissible under a nationwide permit that allowed the following work:

> The repair, rehabilitation or replacement of any previously authorized, currently serviceable structure and/or fill or any currently serviceable structure and/or fill constructed or deposited prior to the requirement for authorization provided such repair, rehabilitation, or replacement does not result in a deviation from plans of the original structure, and/or fill....

*See* 33 CFR § 330.5(a)(3) (1986).

Dr. Sasser did not ask the Corps whether he could do his work under a nationwide permit. Instead, he showed a copy of his neighbor's letter to his attorney who was not familiar with the permit process. The attorney did not inspect the rice fields that Dr. Sasser proposed to enclose. Nevertheless, relying on Dr. Sasser's description of the project, the attorney said Dr. Sasser could proceed under the nationwide permit. He made no charge for this offhand advice. As described in Part I of this opinion, Dr. Sasser's project involved much more than topping an existing embankment or the rehabilitation of a currently serviceable structure.

▮▮▮▮ Although persons operating under a nationwide permit generally need not obtain specific approval from the Corps before discharging dredged materials, "if a private party, acting under the assumption that its discharge is allowed under a nationwide permit, makes a discharge, that party bears the risk of liability for rectifying the

harm done if in fact the discharge is not permitted." *Orleans Audubon Soc'y v. Lee,* 742 F.2d 901, 909–10 (5th Cir.1984) (dictum). The Administrator concluded that Dr. Sasser's knowledge of the circumstances of his attorney's opinion and his consistent refusal to comply with the orders of the Corps and the EPA failed to prove good faith. Denial of Dr. Sasser's claim of good faith reliance on his attorney's advice was not an abuse of discretion.

In addition, the degree of culpability is but one factor pertinent to assessment of civil fines for violations of the Act. 33 U.S.C. § 1319(g)(3). When determining the level of the fine, the Administrator also found that the offense was serious and Dr. Sasser was able to pay the penalty. Substantial evidence supports these findings, and the Administrator's imposition of the penalty was not an abuse of discretion.

Dr. Sasser's petition for review is denied.