**UNITED STATES of America, Plaintiff,**

v.

**John J. REAVES, Jr., Defendant.**

**No. 94–925–Civ–J–20.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 22, 1996.

Ralph Lee, Sandra S. Bower, U.S. Attorney's Office, Middle District of Florida, Jacksonville, FL, James R. Thornton, Jr., Corps of Engineers, Jacksonville, FL, Dorothy Lowe Boardman, U.S. Army Corps of Engineers, Jacksonville District, Jacksonville, FL, for plaintiff.

Adam G. Adams, III, Courtney Kneece Grimm, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, Harold S. Lippes, Bledsoe, Schmidt, & Lippes, P.A., Jacksonville, FL, for defendant.

### ORDER

SCHLESINGER, District Judge.

Before the Court is Defendant John J. Reaves, Jr.'s (Reaves) Motion for Summary

Judgment (Doc. No. 20, filed December 29, 1995). The United States filed a memorandum in opposition on February 16, 1996 (Doc. No. 25). Defendant contends that summary judgment is the appropriate resolution of this case, as there are no material facts in dispute, and that the United States' civil action against him for violations of the Clean Water Act (the Federal Water Pollution Control Act Amendments of 1972 and its amendments (CWA)), 33 U.S.C. §§ 1251–1387, and the Rivers and Harbors Act of 1899 (RHA), 33 U.S.C. § 403, is barred by the statute of limitations, pursuant to 28 U.S.C. § 2462, because it was not brought within five (5) years of the alleged violation. The United States concedes that there are no material facts in dispute, but argues that summary judgment is not warranted because, under the correct interpretation of section 2462, the action was brought within five years of the violation.

The resolution of this motion turns on when, if at all, the statute of limitations began running, or "accrued," pursuant to section 2462: (1) when the events giving rise to the action occurred, the "initial violation," as Defendant argues, or, as the Government contends; either (2) the limitations period has not yet begun to run, because Defendants' violation is a continuing one; or (3) when the Government first knew, or had reason to know, that illegal activity had occurred. For the reasons stated herein, based on the remedial purposes of the CWA and the RHA, the Court agrees with Plaintiff that summary judgment is improper.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). A moving party discharges its burden

on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbour Development Corp. v. City of Key West,* 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989). The nonmovant need not be given the benefit of every inference, but only of every "reasonable" inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

■ Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

■ As noted, the parties do not dispute the facts underlying Plaintiff's claims. The United States brought this civil enforcement action pursuant to Section 309 of the Clean Water Act, 33 U.S.C. § 1319, and Section 12 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 406, seeking both injunctive relief and civil penalties against Defendant for dredge and fill activities in and adjacent to Alligator Creek on his property located at the end of Cemetery Road, in Section 25, Township 02 North, Range 24 East, Callahan, Nassau County, Florida (Site or Creek). The Complaint alleges the unpermitted discharge of dredged or fill materials into wetlands on the site, in violation of the above-referenced statutes. The site is located in a remote rural area, with its sole access from the south via a two-lane dead-end road, Jones Cemetery Road. The alleged violation is not visible from the roadway.

During the summer of 1981, Defendant excavated material from the Creek to create a canal and discharged the material as fill over approximately seventeen (17) acres of the Creek to create fast land. Defendant does not deny that, prior to his filling it, the site constituted wetlands and waters of the United States. Defendant also acknowledges that he authorized the discharge of the material into those waters without a permit from

the U.S. Army Corps of Engineers (Corps), which is required under section 301 of the CWA. The Corps discovered the violation during an initial site visit on December 6, 1989, and issued a Cease and Desist letter on December 20, 1989. Following an evaluation and public interest review, during which Federal resource agencies and private environmental groups recommended denial, the Corps denied Defendant's application for a permit for the discharge. The Government brought this action on September 21, 1994. The Government alleges that until Defendant takes remedial steps to restore the waters to their condition and capacity prior to the discharge, his violation is a continuing one. Plaintiff seeks both injunctive relief and a civil penalty of up to $25,000 per day of violation.

The parties agree that since the CWA and RHA do not set out specific time limits within which the Government may bring an action under the sections, the provisions of 28 U.S.C. § 2462 apply to the Government's action for civil fines. Defendant asserts that section 2462 also applies to the Government's action for injunctive relief. The United States disagrees with that interpretation.

Section 2462 reads, in relevant part:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date *when the claim first accrued . . . .*

28 U.S.C. § 2462 (emphasis added).

Defendant asserts that the CWA and RHA claims "accrued," on the date of the underlying violation—in this case, June of 1981. As a result, Defendant asserts that Plaintiff's claims both for injunctive relief and civil damages are barred by the statute of limitations, as this action was not filed until September 21, 1994, more than thirteen years later.

Plaintiff, on the other hand, raises three arguments in opposition to the motion for summary judgment. First, the Government contends that Defendant's unlawful actions constitute a continuing violation of the CWA, as long as the illegal fill remains in place, therefore, the limitations period under section 2462 has not yet begun to run. Second, Plaintiff argues that, even if the claim is deemed to have accrued for purposes of section 2462, the correct date of claim accrual is the date when the Government first knew, or had reason to know, that illegal fill activity had occurred. The Government contends the date they first learned of the violation was on December 6, 1989, the date a Corps biologist first observed the results of the fill activity and determined that it had been conducted in violation of the CWA and the RHA. Accordingly, the argument goes, the Government's complaint was filed within the five-year period. Finally, the Government contends its claim for injunctive relief is a separate claim for relief that is not subject to the statute of limitations in section 2462. Thus, even if a claim for civil penalties is barred, the United States is entitled under the CWA and the RHA to full restoration of the navigable waters unlawfully filled by Reaves.

The Eleventh Circuit has not decided the issue of whether 28 U.S.C. § 2462 controls the time for filing lawsuits alleging continuing violations under section 404 of the CWA. A district court within our circuit was presented with the issue, but decided the case on other grounds. *United States v. Windward Properties, Inc.*, 821 F.Supp. 690, 695–96 (N.D.Ga.1993) (denying defendant's motion for summary judgment because a genuine question of fact existed as to whether Plaintiff "knew or reasonably should have known" that Defendant was violating the CWA more than five years prior to bringing the action). A recent Fourth Circuit case in the which the Court reviewed an administrative agency decision that assessed civil penalties pursuant to an amendment of the Clean Water Act, is instructive. In *Sasser v. Administrator*, 990 F.2d 127, 129 (4th Cir.1993), the Defendant discharged dredged and fill material into wetlands without a permit in 1986. An EPA administrative law judge (ALJ) imposed an administrative penalty for violating 33 U.S.C. § 1311. The defendant contended the ALJ lacked jurisdiction to assess civil penalties, because at the time of the illegal discharge, EPA's only authorized method of recovering civil penalties was

through an action in district court. In finding that the defendant's violation of the CWA was a continuing one, the court stated:

> Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation [citations omitted]. The administrative complaint properly charged a continuing violation. The [Clean Water] Act, both before and after the 1987 amendment, authorized the imposition of a civil penalty not to exceed $10,000 for each day of the continuing violation.... Dr. Sasser's violations continued long after the enactment of the 1987 amendment....

990 F.2d at 129. *See also North Carolina Wildlife Federation v. Woodbury,* 29 Env't Rep.Cas. (BNA) 1941, 1989 WL 106517 (E.D.N.C.1989) (NCWF) (holding that the failure to remove unlawful fill from waters of the United States constitutes a continuing violation of the Clean Water Act sufficient to confer federal jurisdiction under the citizen suit provision, 33 U.S.C. § 1365).

Similarly, the Court finds in this case that Defendant's unpermitted discharge of dredged or fill materials into wetlands on the site is a continuing violation for as long as the fill remains.[1] Accordingly, the five-year statute of limitations under 28 U.S.C. § 2462 has not yet begun to run on the Government's claims either for civil penalties or injunctive relief. This finding is consistent with the remedial purposes of the CWA and RHA.

Defendant's Motion for Summary Judgment (Doc. No. 20) is **DENIED.**

DONE AND ORDERED.

---

[1]. The D.C. Circuit case cited by Defendant does not compel a different result. In that case, the Court held that "an action, suit or proceeding to assess or impose a civil penalty must be commenced *within five years of date of the violation giving rise to the penalty." 3M Co. v. Browner,* 17 F.3d 1453, 1462 (D.C.Cir.1994) (emphasis added). In light of the Court's finding in the instant case that the violation is a continuing one, the Government's lawsuit was commenced within the relevant period.