PAUL G. BYRON, UNITED STATES DISTRICT JUDGE
This cause comes before the Court on Defendants, Perdido Land Development Co., Inc. and United States Steel Corporation's, Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 32) and Plaintiff California Financial, LLC.'s Memorandum of Law in Response to Defendants' Motion to Dismiss (Doc. 39). Upon consideration, the Court will deny Defendants' Motion to Dismiss.
I. BACKGROUND
In this contract interpretation case, Plaintiff, California Financial, LLC, ("Plaintiff"), alleges that Defendants, Perdido Land Development Co., Inc. ("Perdido") and United States Steel Corporation ("USS") (collectively "Defendants"), breached their contract requiring Defendants to complete remediation activities on real property (the "Property") purchased by Plaintiff.
*1308 Plaintiff purchased the Property knowing that it was contaminated with tetrachloroethene ("PCE")-a chemical used by commercial dry cleaners-in concentrations that exceed allowable levels under Florida law. (Doc. 26, ¶ 12). Plaintiff purchased the Property pursuant to a written contract (the "Contract"), in which Defendants agreed to assume responsibility for remediating the PCE contamination. (Id. ¶ 15). Based on this contractual obligation, Plaintiff purchased the Property "as is, where is." (Id. ).
The Contract provided that Defendants agreed to remediate the Property in accordance with a Site Assessment and Remedial Action Plan (the "Remediation Plan") prepared by environmental consultants, Golder Associates, Inc. ("Golder"). (Id. ¶¶ 11, 16). In the Contract, Defendants agreed to remediate the PCE contamination until they obtained a "no further action" letter ("NFA Letter") from the Florida Department of Environmental Protection ("FDEP"). (Id. ¶ 16).
From 2002 to 2013, Golder implemented the Remediation Plan as approved by the FDEP. (Id. ¶ 28). On January 5, 2016, almost fourteen years after Plaintiff purchased the Property, Golder issued a Year 2 Annual Post-Injection Groundwater Monitoring Report (the "Year 2 Report"), which reflected that contamination levels had been reduced yet still remained above permissible standards. (Id. ¶ 32).
Based on the condition of the Property after the issuance of the Year 2 Report, Golder and Defendants sought a "no further action with controls" letter ("NFA with Controls Letter") from the FDEP. (Id. ¶ 31). On March 2, 2016, the FDEP issued correspondence agreeing that the site was eligible for a NFA with Controls Letter, stating "[w]e concur that the data demonstrates that a Site Rehabilitation Completion Order with Controls pursuant to Chapter 62-780.680(3), Florida Administrative Code (F.A.C.), is feasible for site closure." (Id. ¶ 33). Prior to issuing the NFA with Controls Letter, the FDEP required Defendants to submit the following:
• A draft copy of the proposed restrictive covenant (that is, the institutional control),
• A certified copy of the deed for each property that is being encumbered/restricted,
• A copy of the legal description of each property that is being encumbered/restricted even if only a portion of the property will be encumbered/restricted,
• A letter from the owner of each property that is being encumbered/restricted stating that they are willing to place a restrictive covenant on their property's deed,
• A scaled diagram of each property that is being encumbered/restricted. If only a portion of a property will be restricted, that area must be clearly depicted on the diagram,
• If proposing a partial encumbrance, then a copy of the legal description for the part of the property or properties that will be restricted as Exhibit B to the restrictive covenant and a Specific Purpose Survey, Boundary Survey or Sketch and Description of the restricted area(s), as defined under Chapter 5J-17, F.A.C., that is prepared using the minimum technical standards (MTS) that includes four corners of the restricted area(s) labeled with the State Plane Coordinates (SPC) system or geographical coordinates,
• the restricted portion (not just the contaminated area, but the entire area to be restricted),
• An Ownership and Encumbrance Report, Title Insurance Commitment, *1309 or Title Insurance Policy that reflects all parties having an interest in the Property, including owners, lienors, or easement holders. The search should normally commence with the instrument constituting the root of title under the Marketable Record Title Act (MRTA) (evidence of title that is at least 30 years old and should include a review of all subsequently recorded instruments that are not eliminated by MRTA,
• Copies of all documents showing an interest in the property or properties (e.g., mortgages, leases, subleases, assigned leases, liens, easements, etc.),
• A survey of the location of these interests in the property or properties in relation to location of the proposed restricted area(s).
(Id. ¶ 33).
Plaintiff claims that the controls and conditions set forth in the FDEP's March 2, 2016, letter are unacceptable and would adversely affect the value of the Property and encumber the Property in ways that were not considered at the time the Contract was made. Plaintiff further contends that Defendants' failure to obtain a NFA Letter "stating that remediation has been completed" within a reasonable time constitutes a breach of the Contract. (Id. ¶ 35). Accordingly, Plaintiff initiated the instant suit, bringing a claim for breach of contract (Count I) and a claim for violation of Florida Statute § 376.313 for the contamination of the Property (Count II).
Before the Court at this time is Defendants Motion to Dismiss. (Doc. 32). Defendants argue that Count I is due to be dismissed because Defendants met their obligation of obtaining a NFA Letter from the FDEP. Defendants also argue that Count II should be dismissed because the claim is barred by three things: the statute of limitations, the Contract itself; and the doctrine of caveat emptor . (Id. at p. 2).
II. STANDARD OF REVIEW
A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face when the plaintiff alleges enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Mere legal conclusions or recitation of the elements of a claim are not enough. Twombly , 550 U.S. at 555, 127 S.Ct. 1955. Additionally, courts must accept all well-pleaded allegations within the complaint as true. Id. Although courts do not have to accept legal conclusions made in the complaint as true. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. Hunnings v. Texaco, Inc. , 29 F.3d 1480, 1483 (11th Cir. 1994).
Rule 8 (a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Twombly , 550 U.S. at 545, 127 S.Ct. 1955. The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove *1310 the allegations. See Jackam v. Hosp. Corp. of Am. Mideast, Ltd. , 800 F.2d 1577, 1579 (11th Cir. 1986).
III. DISCUSSION
A. Count 1: Breach of Contract
The central issue in the breach of contract claim is whether Defendants were contractually obligated to obtain a "no further action letter" from the FDEP, or whether a "no further action letter with controls" satisfies Defendants' remedial obligations under the Contract.
Section 7.13 of the Contract provides that Defendants "agree[ ] herein to remediate the [dry cleaning solvent contamination] problem in accordance with the Golder Associate's Inc.'s [Remediation Plan]." This obligation "shall terminate upon receipt of a 'no further action' letter from the [FDEP] stating that remediation has been completed." (Doc. 26-1, p. 13).
It is Plaintiff's position that the unambiguous language of the Contract requires Defendants to obtain a NFA Letter. Because the Contract makes no mention of a NFA with Controls Letter, or any other conditional language, Plaintiff contends that Defendants are contractually obligated to obtain a NFA Letter without any conditions or controls. Defendants disagree, arguing that the laws governing remediation of dry cleaning contaminations do not distinguish between a NFA Letter and a NFA with Controls Letter. Accordingly, Defendants maintain that the FDEP's March 2, 2016, letter stating that the Property is eligible for a NFA with Controls Letter satisfies their obligations under the Contract.
The resolution of this disagreement requires the Court to engage in a contractual interpretation of the term "no further action letter" as used in the Contract. "Generally courts may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgement." Gullo v. Equifax Info. Servs. LLC , No. 815CV01312EAKMAP, 2016 WL 3221735, at *3 (M.D. Fla. June 8, 2016). In the Amended Complaint (Doc. 26), Plaintiff alleges that Defendants were contractually obligated to obtain a NFA Letter from the FDEP stating that remediation has been completed. Because the facts alleged indicate that Defendants have not obtained a NFA Letter, this allegation is sufficient to state a claim for breach of contract under Florida law. Accordingly, Defendants' motion to dismiss Count I will be denied.
B. Count II: Violation of Florida Statute § 376.313
In Count II, Plaintiff brings a claim for strict liability against Perdido for violation of Florida Statute § 376.313(3), which creates a private right of action for "all damages resulting from a discharge or other condition of pollution covered by [the Pollutant Discharge Prevention and Removal Act]." Because PCE is covered under this statute, Plaintiff alleges that Perdido is strictly liable for damages caused to the Property resulting from the contamination of PCE. (Doc. 26, ¶ 55). Defendants move to dismiss Count II, arguing that the claim is barred Florida's statute of limitations, the contract itself, and the doctrine of caveat emptor . (Doc. 32, pp. 17-24).
1. Statute of Limitations
Defendants argue that a claim that does not have a specific limitations period-such as the claim raised in Count II-must be brought within four years pursuant to Florida Statute § 95.11(3). However, in Florida, "the statute of limitations in environmental contexts where there is a continuing invasion of rights does not begin to run until the wrongful invasion of rights that constitutes the violation ceases."
*1311 Fla. Dep't of Envtl. Prot. v. Fleet Credit Corp. , 691 So.2d 512, 514 (Fla. 4th DCA 1997) (citing United States v. Reaves , 923 F.Supp. 1530 (M.D. Fla. 1996) ). To hold otherwise would frustrate "the Legislature's stated intention to abate pollution that threatens human, animal, aquatic, and plant life as well as property interests." Id.
A statute of limitations argument is an affirmative defense and thus best raised by answer rather than by a motion to dismiss. "[O]nly in extraordinary circumstances where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law, should a motion to dismiss on this ground be granted." Rigby v. Liles , 505 So.2d 598, 601 (Fla. 1st DCA 1987). In this case, Plaintiff alleges that Defendants failed to fully remediate the contamination of PCE on the Property. Indeed, the facts alleged in the Amended Complaint indicate that the PCE contamination levels remain above permissible standards. Because the alleged environmental harm appears to be ongoing, it is not sufficiently clear from the face of the complaint that the statute of limitations bars the instant claim. Count II is therefore not barred by the statute of limitations.
2. The Contract
Defendants next argue that Count II is barred by the Contract itself. According to Defendants, Plaintiff "explicitly and comprehensively waived any right to any damages claim in at least two provisions of the Contract." (Doc. 32, p. 18). Specifically, Defendants point to Section 9.2 of the Contract, which provides:
[Plaintiff] hereby waives, releases and forever discharges [Perdido] ... from any and all claims, actions, causes of action, demands, liabilities, damages, costs, expenses or compensation whatsoever, whether direct or indirect, known or unknown, foreseeable or unforeseeable, which [Plaintiff] may have at the Closing or which may arise in the future on account of or in any way arising out of or connected with the Property, including... (b) the presence or release in, under, on or about the Real Property (including soils and groundwater on and under the Real Property) of any hazardous materials.
(Id. ). Defendants further contend that Count II is barred by the "as is, where is" clause of the Contract, which provides that Defendants "shall not be responsible for any physical or environmental conditions relating to or affecting the Premises." (Id. at p. 15).
Both Section 9.2 and the "as is, where is" clause are subject to exceptions, however, exempting from release Defendants' obligations found in Article 7 of the Contract.[1] Article 7 includes Defendants' obligation to remediate the Property of PCE contamination. (Doc. 26-1, p. 12). Thus, the release clauses cited by Defendants, when read with the exceptions for obligations contained in Section 7, do not unequivocally release Defendants from all liability for PCE contamination on the Property.
Moreover, some courts have held that an "as is" clause in a contract does not release a party from statutory environmental liability. See, e.g., Wiegmann & Rose Int'l Corp. v. NL Indus. , 735 F.Supp. 957, 962 (N.D. Cal. 1990) (holding "that allowing an otherwise 'responsible party' to avoid [environmental *1312 ] liability ... based on an "as is" clause in the deed conveying the property, would clearly circumvent both the intent and the language of the statute"); Int'l Clinical Lab., Inc. v. Stevens , 710 F.Supp. 466, 469 (E.D.N.Y 1989) (holding that "as is" clause did not bar an action to recover hazardous waste cleanup costs). Although these cases both dealt with violations of the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), at least one Florida court has held that § 373.313 was modeled after CERCLA and should be given the same interpretation as CERCLA. Gen. Dynamics v. Brottem , 53 So.3d 334, 337 (Fla. 5th DCA 2010). Since several federal courts have held that CERCLA claims are not barred by "as is" clauses, then it stands to reason that "as is" clauses should not bar claims brought under § 373.313. The Court thus finds that the Contract does not bar a claim under § 376.313.
3. Caveat Emptor
Lastly, Defendants argue that Plaintiff's claim is barred by the doctrine of caveat emptor . The doctrine of caveat emptor holds that "the vendor of land was not liable to his vendee, or a fortiori to any other person, for the condition of the land existing at the time of transfer." Haskell Co. v. Lane Co. , 612 So.2d 669, 675 (Fla. 1st DCA 1993) (quoting Restatement (Second) of Torts § 352 cmt. a (1965) ). In other words, a seller of commercial property cannot be liable for injuries to a buyer caused as a result of a defect in existence at the time the property was purchased. Craig v. Gate Mar. Properties, Inc. , 631 So.2d 375, 377 (Fla. 1st DCA 1994). Importantly to the case at hand, however, the doctrine only applies "in the absence of express agreement." Haskell , 612 So.2d at 675.
The Court holds that the doctrine of caveat emptor does not bar the instant claim for two reasons. First, the doctrine applies only "in the absence of express agreement." Haskell , 612 So.2d at 675. In this case, Plaintiff claims that Defendants were obligated under the Contract to remediate the contamination of the Property. Defendants cannot now hide behind the doctrine of caveat emptor for their alleged failure to fully remediate the contamination of PCE on the Property.
Second, the legislature intended to limit the defenses to a cause of action under § 373.313 to those specified in the statute. Specifically, the statute provides:
Nothing in this chapter shall prohibit or diminish a party's right to contribution from other parties jointly or severally liable for a prohibited discharge of pollutants or hazardous substances or other pollution conditions. Except as otherwise provided in subsection (4) or subsection (5), in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred. The only defenses to such cause of action shall be those specified in s. 376.308.
§ 373.313(3). The defenses specified in § 376.308 do not include the doctrine of caveot emptor , indicating that it was the legislature's intent to not allow the doctrine to bar a claim under § 376.313(3). And at least one Florida court agrees. In Kaplan v. Peterson , 674 So.2d 201, 205 (Fla. 5th DCA 1996), the court held that a current owner of commercial real property could recover from prior owners who allegedly caused environmental contamination of the property pursuant to § 376.313. In so holding, the court found that the cause of action was not barred by the doctrine of caveat emptor . The court explained that "Chapter 376 addresses the serious ground and water pollution problems (among others) caused by contamination of soil and *1313 ground water .... It declares that it is vital to protect Florida's land and water resources from such pollution, and makes it a top priority to prevent and quickly remedy any pollution." Id. at 203. To allow the doctrine of caveat emptor to bar a cause of action brought by a current landowner against the person who allegedly caused the contamination "makes little sense." Id. Accordingly, the Court holds that the Count II in this case is not barred by the doctrine of caveat emptor .[2]
Defendants Motion to Dismiss Count II will be denied.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Amended Complaint and Memorandum of Law (Doc. 32) is DENIED .
DONE AND ORDERED in Orlando, Florida, on August 9, 2017.

Section 9.2 states that "the foregoing provisions shall not serve to release Seller from any breach of the express representations and warranties set forth in Article 7." (Doc. 26-1). Similarly, the "as is, where is" clause provides that Defendants are not responsible for any physical or environmental conditions affecting the Property, "except for [Defendants'] obligations as set forth in Section 7.13." (Id. ).

Defendants also seek to limit the amount of damages available under Count II. The Court declines to consider Defendants' damages argument because "[i]t is inappropriate for the Court to wade into factual issues, such as the measure of Plaintiffs' damages, on a motion to dismiss." Berman v. ADT LLC , No. 12-7705, 2013 WL 6916891, at *8 (D.N.J. Dec. 13, 2013).